IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

|  |  |  |
|---|---|---|
| ANTHONY MARVIN GAMBLE, | ) | |
|  | ) | No. 2:11-cv-03339-DCN |
| Petitioner, | ) | No. 2:10-cr-00020-DCN |
|  | ) | |
| vs. | ) | |
|  | ) | **ORDER** |
| UNITED STATES OF AMERICA, | ) | |
|  | ) | |
| Respondent. | ) | |
|  | ) | |

      This matter comes before the court on a motion to vacate, set aside, or correct a federal sentence brought by Anthony Marvin Gamble, a federal prisoner, under 28 U.S.C. § 2255. For the reasons set forth below, the court denies Gamble's requested relief.

## I. BACKGROUND

      Gamble was arrested on September 9, 2009 and charged with drug trafficking. The Clarendon County Sheriff's Office and South Carolina Law Enforcement Division utilized a confidential informant (CI) to conduct controlled purchases of cocaine and crack cocaine from Gamble. Prior to becoming an informant, the CI had purchased narcotics from Gamble. On April 6, 2009, the CI bought .78 grams of crack cocaine from Gamble, and on April 7, 2009, the CI bought .79 grams of crack cocaine from Gamble. The CI paid $100 for each purchase. On July 15, 2009, the CI purchased 2.44 grams of powder cocaine for $150.

      On August 31, 2009, the CI and an undercover officer drove to Gamble's residence to purchase a handgun and crack cocaine. Around three days earlier, the CI had called Gamble and asked if he could purchase a gun and crack cocaine, which Gamble agreed to sell. When the CI arrived, he was greeted by Gamble, and the two

1

walked towards Gamble's car to retrieve the handgun. As they approached the car, the CI gave Gamble $340 in cash—$300 for the handgun and $40 for crack cocaine.[1] In turn, Gamble handed the handgun to the CI.

Gamble and the CI then began walking to Gamble's grandmother's trailer, where Gamble believed his crack cocaine stash was located. Along the way, the undercover agent accompanying the CI pulled his truck near the CI and was given the handgun. Gamble then entered the trailer to retrieve crack cocaine but did not find any inside. After exiting the trailer, Gamble asked the CI whether he would instead purchase powder cocaine. The CI agreed, and Gamble handed the CI a $20 bag of powder cocaine. Gamble then walked to another trailer to retrieve more cocaine.[2] Based on an undercover video, less than seven minutes passed between the time the CI arrived and he was given cocaine.[3] About two minutes after walking to the second trailer, Gamble passed another $20 bag of powder cocaine to the CI.

On May 27, 2010, Gamble pled guilty to Counts Five and Six of a six-count indictment. Count Five charged Gamble, a felon, with knowingly possessing a firearm in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), and 924(e)(1). Count Six charged Gamble with knowingly using and carrying a firearm during and in relation to, and in

---

[1] The original agreement was for the CI to buy a nine millimeter handgun for $200 and $40 worth of crack cocaine, but Gamble later withdrew his offer to sell the nine millimeter and instead offered to sell a .40 caliber pistol for $300. Thus, the agreed-upon deal was for the CI to purchase a handgun for $300 and $40 worth of crack cocaine.

[2] Captain Kennedy of the Clarendon County Sheriff's Office testified, "I know there w[ere] a bunch of trailers out there and they're all close together."

[3] The timestamps on the video show that the CI arrived around 18:53:30 and the first exchange of cocaine took place around 19:00:14. However, according to Gamble, "[a]bout ten minutes" passed between the arrival and first drug exchange. The elapsed time would have been even shorter but for the CI's impairments—Gamble testified that the CI is bow-legged and has a significant limp.

furtherance of, a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1). In exchange for a plea, the government dismissed Counts One through Four. Gamble was sentenced on October 20, 2010 to 106 months imprisonment.

On December 8, 2011, Gamble filed a petition under 28 U.S.C. § 2255 to vacate, set aside, or correct his federal sentence. Gamble alleges that his attorney during plea negotiations, J. Robert Haley, failed to properly inform him of what the government was required to prove under § 924(c)(1) to convict him of knowingly using and carrying a firearm during and in relation to, and in furtherance of, a drug trafficking crime. Gamble also claims that he informed his attorney during sentencing, Joseph S. Mendelsohn, that he "was not happy with his sentence and to file a direct appeal," but that "Attorney Mendelsohn failed to file a direct appeal as instructed and never returned [to] the county jail to consult with Gamble about any of these potential issues that could have warranted an appeal." Mot. to Vacate 6. Finally, in a supplemental brief, Gamble claims that the evidence did not support a conviction under § 924(c)(1).

In response, Attorney Haley submitted an affidavit in which he states there was "more than sufficient evidence to prove Mr. Gamble possessed the firearm in furtherance of his sale of cocaine," and that he "reviewed the case law pertaining specifically to 18 U.S.C. § 924(c), and explained in great detail to Mr. Gamble how that case law applied to the facts of his case." Haley Aff. 2. Attorney Mendelsohn also submitted an affidavit in which he states that after he appeared with Gamble for sentencing on October 20, 2010, the "only request I received from Gamble was a letter . . . postmarked September 20, 2011—more than ten months after the time for filing a notice of appeal had expired— wherein he requested copies of his indictment, plea agreement, and criminal docket

sheet." Mendelsohn Aff. ¶ 4. According to Mendelsohn, Gamble made no request to appeal his conviction or sentence. Id. Finally, the government contends that Gamble violated § 924(c)(1) by using and carrying a firearm in relation to, and possessed a firearm in furtherance of, a drug trafficking crime.

The court held an evidentiary hearing on Gamble's § 2255 petition on November 27, 2012 in accordance with Fourth Circuit precedent. See United States v. Poindexter, 492 F.3d 263, 273 (4th Cir. 2007) ("[W]hen a defendant brings a § 2255 claim based on his attorney's failure to file a requested notice of appeal, the district court should hold a hearing if it is unclear in the record whether the attorney was so instructed.").

## II.  STANDARD

Gamble moves to vacate, set aside, or correct his federal sentence pursuant to 28 U.S.C. § 2255. That section provides, in relevant part,

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence.

Id. A petitioner must prove the asserted grounds for relief by a preponderance of the evidence. Miller v. United States, 261 F.2d 546, 547 (4th Cir. 1958).

## III.  DISCUSSION

In his § 2255 petition, Gamble raises three arguments: (1) Attorney Haley was ineffective for failing to give sufficient advice; (2) Attorney Mendelsohn was ineffective for failing to file a direct appeal; and (3) his sentence was erroneous because he did not violate 18 U.S.C. § 924(c).

### A. Ineffective Assistance of Counsel

Gamble's first two claims are based on ineffective assistance of counsel.[4] The Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984), announced a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance. "To establish cause for [a] default based upon ineffective assistance of counsel, [petitioner] must show that [his] attorney['s] performance fell below an objective standard of reasonableness and that [he] suffered prejudice as a result."  United States v. Mikalajunas, 186 F.3d 490, 493 (4th Cir. 1999) (citing Strickland, 466 U.S. at 687). A defendant who alleges ineffective assistance of counsel following the entry of a guilty plea has an even higher burden to meet. See Hill v. Lockhart, 474 U.S. 52, 59 (1985). Courts must indulge a strong presumption that counsel's conduct falls within the wide range of reasonably professional assistance. Strickland, 466 U.S. at 689-90.

### 1. Attorney Haley

First, Gamble asserts that Attorney Haley was ineffective for failing to advise him of the government's burden in bringing the charge under 18 U.S.C. § 924(c)(1) and his potential defenses. He states, "Had Attorney [Haley] informed Gamble of these potential affirmative defenses to the § 924(c)(1) he would not have plead guilty and would have persisted in going to trial or could have negotiated a different plea." Mot. Vacate 6; see also Gamble Dec. ¶ 6.

In his affidavit, Attorney Haley counters that he

> reviewed the case law pertaining specifically to 18 U.S.C. § 924(c), and explained in great detail to Mr. Gamble how that case law applied to the

---

[4] An ineffective assistance of counsel claim may be raised under § 2255 whether or not it could have been raised on direct appeal. See Massaro v. United States, 538 U.S. 500, 504 (2003).

> facts of his case. The undersigned also emphasized that a conviction under § 924(c) would *require* this Court to sentence Mr. Gamble to a *mandatory minimum consecutive sentence of five (5) years*. . . . [When he pled guilty,] Mr. Gamble had been given a copy of the plea agreement, and the undersigned read the plea agreement to Mr. Gamble word for word. Paragraph 1 of the plea agreement set forth the crimes for which Mr. Gamble was pleading guilty, the elements the Government would have to prove a[t] trial, and the possible penalties *including*, as to Count Six, that Mr. Gamble faced a minimum term of imprisonment of 5 years which was "*consecutive to any other sentence*."

Haley Aff. 2-3. During the plea colloquy, the court reviewed the elements for violation of § 924(c)(1) and Gamble answered in the affirmative that he understood the charges against him. Gamble also stated that he had plenty of time to go over the indictment and discovery material with his attorney and agreed to the government's recitation of facts supporting the guilty plea. Finally, Gamble answered in the affirmative when asked by the court, "And that gun was sold to an undercover informant the same time as you sold him some drugs, is that correct?" Plea Tr. 16:24-18:14.

The evidence supports a finding that Attorney Haley satisfied the performance prong of Strickland by advising Gamble of the nature of the charges against him, the case law with regard to § 924(c)(1), and the consequences of his guilty plea. The testimony offered at the hearing on Gamble's § 2255 petition bolsters this finding: Gamble admitted that Attorney Haley read the indictment to him, told him what he was being charged with, reviewed the legal standards under § 924(c)(1), and read the plea agreement word for word. Therefore, the court denies Gamble's claim that Attorney Haley was ineffective.

### 2. Attorney Mendelsohn

Second, Gamble claims that Attorney Mendelsohn was ineffective for failing to file a notice of appeal despite being instructed to do so.

"An attorney who fails to file an appeal after being instructed by his client to do so is per se ineffective." United States v. Witherspoon, 231 F.3d 923, 926 (4th Cir. 2000). Counsel only has a "constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think . . . that a rational defendant would want to appeal . . . or . . . that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." Roe v. Flores-Ortega, 528 U.S. 470, 480 (2000).

In his affidavit, Attorney Mendelsohn states that he never received any notice or request from Gamble indicating a desire to appeal the conviction or sentence. See Mendelsohn Aff. ¶ 4 ("My files do not reflect, nor am I aware of any request by Gamble to appeal his conviction or sentence."). Attorney Mendelsohn, who has practiced civil and criminal law since 1965 and serves as the Chief Criminal Court Judge for the City of Charleston, testified at the hearing that had he been asked to file an appeal, he would have done so. Gamble's claims to the contrary are not plausible. See United States v. Turcotte, 405 F.3d 515, 537 (7th Cir. 2005) (stating that "unsubstantiated and largely conclusory statements fall far short" of carrying a petitioner's burden under the two-part Strickland test).

Attorney Mendelsohn's testimony is supported by a letter sent by Gamble in September 2011. In the letter, Gamble states that he is requesting court-related documents because he has "become aware of some possible *new* legal issues in regards to my case that may just apply to me." Dkt. No. 75-2 (emphasis added). This letter, which was sent long after the deadline for filing a notice of appeal had passed, serves as evidence that Gamble had not previously spoken with Attorney Mendelsohn regarding possible issues for appeal. Moreover, Gamble admitted at the hearing on his § 2255

petition that he had no legal argument that would substantiated filing an appeal.[5] For these reasons, the court determines that Gamble has not shown ineffective assistance of counsel on the part of Attorney Mendelsohn.

### B. Violation of 18 U.S.C. § 924(c)(1)

Finally, Gamble asserts that § 924(c)(1) does not apply to his case because "the sale of the drugs did not occur until after the completed sale of the gun" and, therefore, his sentence was in error. Mot. Vacate 21.

This claim is one of legal error arising out of sentencing in that Gamble attacks his substantive sentence rather than his counsel's performance. It is an issue that could have been raised on direct appeal had Gamble requested an appeal. However, no direct appeal was filed and the court has already determined that Gamble never requested such an appeal. As such, the claim is procedurally defaulted. See United States v. Frady, 456 U.S. 152, 165 (1982) ("[A] collateral challenge may not do service for an appeal."); Young v. United States, No. 09-1116, 2012 WL 475774, at *3 (N.D. W. Va. Feb. 13, 2012) ("[N]on-constitutional issues that could have been raised on direct appeal but were not may not be raised in a § 2255 motion . . . . [U]nless the petitioner can show cause and prejudice for the default, the petitioner's . . . claim of insufficient evidence to support the § 924(c) charge [was] procedurally defaulted because [it] could have been, but [was] not, raised on appeal.").

---

[5] Gamble testified,

> Q: Now, so at the time that you got sentenced, really, there wouldn't really have -- in your mind at that time there really wouldn't be a reason to appeal your sentence, right?
> A: No. No, sir.

8

To escape from procedural default, a petitioner must show "cause" excusing the failure to directly appeal the district court's alleged errors and "actual prejudice" resulting from the errors. Mikalajunas, 186 F.3d at 492-93. Gamble has not shown cause for failing to raise his claim on appeal. "'The existence of cause for a procedural default must turn on something external to the defense, such as the novelty of the claim or a denial of effective assistance of counsel.'" United States v. Pettiford, 612 F.3d 270, 280 (4th Cir. 2010) (quoting Mikalajunas, 186 F.3d at 493). As discussed above, Gamble was not denied effective assistance of counsel with respect to his right to appeal his sentence. Therefore, this claim is defaulted.

Even if Gamble could raise this claim, it lacks merit. Gamble agreed to, and carried out, a gun and drug transaction with the CI. Section 924(c)(1)(A) states in pertinent part,

> [A]ny person who, during and in relation to any crime of violence or drug trafficking crime . . . for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime . . . be sentenced to a term of imprisonment of not less than 5 years.

18 U.S.C. § 924(c)(1)(A), (c)(A)(i).

The Fourth Circuit recognizes that § 924(c)(1) creates distinct "use or carry" and "possession" offenses. See United States v. Robinson, 627 F.3d 941, 953 (4th Cir. 2010); United States v. Wood, 271 F. App'x 338, 343 (4th Cir. 2008). Under the "use or carry" prong, the firearm must be used or carried "in relation to" a drug trafficking offense such that it has "some purpose or effect with respect to the drug trafficking crime" and its presence was not "the result of accident or coincidence." Smith v. United States, 508 U.S. 223, 238 (1993). "The firearm must facilitate, or potentially facilitate, the drug

9

trafficking offense." Fuller v. United States, 849 F. Supp. 2d 635, 642 (W.D. Va. 2012). Under the "possession" prong, the possession of the firearm must be in furtherance of a drug trafficking crime. The Fourth Circuit reads "furtherance" in § 924(c) according to its plain meaning of "'[t]he act of furthering, advancing, or helping forward" the defendant's drug crime. United States v. Lomax, 293 F.3d 701, 705 (4th Cir. 2002) (quoting Webster's II New College Dictionary 454 (1999)). In United States v. Robinson, 627 F.3d 941, 955 (4th Cir. 2010), the Fourth Circuit held that "trading drugs for guns constitutes possession in furtherance within the meaning of § 924(c)." When a drugs-for-guns deal is not at issue, factors to considering in determining whether a sufficient connection existed between a defendant's possession of a firearm and his drug trafficking include, but are not limited to:

> [T]he type of drug activity that is being conducted, accessibility of the firearm, the type of weapon, whether the weapon is stolen, the status of the possession (legitimate or illegal), whether the gun is loaded, proximity to drugs or drug profits, and the time and circumstances under which the gun is found.

Lomax, 293 F.3d at 705.

First, the "Fourth Circuit has upheld convictions under the possession prong where drug dealers used firearms as a medium of exchange in their trade, under the theory that the possession and consequent exchange of firearms for drugs or drug money ultimately facilitates more drug transactions." Page v. United States, No. 05-230, 2010 WL 4669074, at *2 (E.D.N.C. Nov. 9, 2010) (citing Woods, 271 F. App'x at 346). Here, Gamble traded a gun and drugs in return for money. At the hearing on his § 2255 petition, he testified as follows:

> Q: But the fact remains that you were more than willing to do drugs and guns with the confidential informant. Correct?
> A: Correct.

10

> . . . .
> Q:  [The CI] said words to the effect, I want 40 hard.  Correct?
> A:  Correct.
> Q:  All right.  And when he said 40 hard, he was referring to crack?
> A:  All right.
> Q:  And he said, I want 40 hard and I want that damn pistol?
> A:  Right.
> Q:  Okay.  And he wanted them at the same time, as best you could tell?  You understood that he wanted them at the same time?
> A:  Right.
> . . . .
> Q:  So at the time that you're making this deal, you believed you had $40 worth of crack.  Isn't that true?
> A:  Right.

Even though Gamble did not actually have $40 worth of crack cocaine, he was able to quickly retrieve $40 worth of powder cocaine to sell to the CI, shortly after he had given the CI the handgun.  The sale of the gun and drugs was one transaction:  Gamble and the CI had agreed to a specific date, time, and place, and the transaction occurred when the CI handed Gamble $340 for the purchase of a gun and drugs at that specific date, time, and place.  The fact that Gamble did not simultaneously hand the CI both the gun and drugs is not of consequence here:  Gamble could not have received money while passing over a gun and drugs all at once, as he only has two hands.  For these reasons, the possession prong of § 924(c)(1) was satisfied.

In addition, Gamble used and carried a firearm during and in relation to a drug trafficking crime.  Like in this case, the Eighth Circuit has held that a defendant "used" a firearm in violation of § 924(c)(1)(A) when he sold drugs and guns in the same transaction.  See United States v. Claude X, 648 F.3d 599, 604 (8th Cir. 2011).  Moreover, in United States v. Lipford, 203 F.3d 259, 267 (4th Cir. 2000), the Fourth Circuit noted that drug purchasers can "sweeten the pot" by offering to purchase not only drugs, but other illegal goods as well.  "Where that other illegal good is a firearm, that

11

gun's involvement in the drug transaction is not 'spontaneous' or 'co-incidental;' on the contrary, the firearm facilitates the drug transaction, making it possible for the drug buyer to get the drug seller to take the risks inherent in selling contraband." Id.  Here, the CI "sweetened the pot" by offering to buy drugs and a gun.  Gamble agreed to and carried out the transaction, and the gun promoted and facilitated the crime.  See United States v. Mackey, 265 F.3d 457, 461 (6th Cir. 2001).  For these reasons, his conduct on April 31, 2009 satisfies the elements of a possession offense and use or carry offense under § 924(c)(1).

### IV.   CONCLUSION

For the foregoing reasons, the court **DENIES** defendant's petitioner's request for relief under 28 U.S.C. § 2255.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED** because petitioner has failed to make a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).

**AND IT IS SO ORDERED**.

_____
**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**January 8, 2013**
**Charleston, South Carolina**